Good morning, Your Honor. Good morning. My name is Michael Kling, attorney for Appellant Get Outdoors. Please proceed, Your Honor. Thank you very much. As you are aware, this is an appeal from an order granting summary judgment, and our position is that the motion should not have been denied, I think that there, or should not have been granted, should have been denied. Are you counsel for all of the various and sundry cases against the different municipalities? The answer is I was a principal of Get Outdoors, and I was not actively involved in the preparation of the complaint, and anything until this appeal became apparent. What does that mean? It means that I was a principal of Get Outdoors. When did the appeal become apparent? Well, actually, when counsel for all the cases demanded fees that we couldn't pay, and said that he wouldn't pursue the appeal, and he was dropping out of the case. And so at that point in time, I became involved in this matter as counsel. When you say a principal, what does that mean? It means I'm a minority owner. What is the principal difference between this case and all of the other cases that were unsuccessful? Well, I think there are two things, and I would like to address that. The first one is that I think that there are some factors that were not allowed to be developed in this case based upon a futility doctrine, and then also that we are so far down the road in that settlement agreement that we now have a contractual obligation that clearly those other cases didn't have. So you think that's your strongest argument? I would like to address both, if it's acceptable. Thank you. The first one is, and I'd like to be, I understand, yes, with the three other cases that it's a very strong argument that this should be coupled with that and is thrown out the door. But what I was informed is that we mentioned in our brief that there was a futility for us to file an amended application based upon the height and size restrictions, because we were informed it doesn't matter what you file, you're going to go ahead and be rejected anyway. So even if we went down that road, they're going to reject us, and so because it's futile, we did not go ahead and file amended applications. But we understand there were different ordinances involved. That's the only thing that saves you a little bit. But you made the decision not to, no one forced that upon you, you made the decision. That is correct, and that was a legal strategy at that time, which was back in 2003. So it was when we were told by a city employee that it doesn't matter if you file again, because we're not going to go ahead and accept them anyway, why make us go through that process? But isn't the same thing true here, that the height and size restrictions? And that's what we're saying, make us go ahead and abide by that, and reject it anyway, why go ahead and go through that exercise? Because you need to do that to be here today, that's why. But I think that what they're doing is that you're trying to say, go ahead and file, we would have rejected, but now because we told you not to file, we're going to hide behind this constitutional restriction of height and size. I don't think that's fair, when they say don't do it, we're going to reject it. But is it legal? I know fairness is one thing, but legality is a different thing. So does the law permit, it appears that's a legitimate time, place, and manner restriction that you can't meet, and so therefore you can't challenge the ordinance. I will agree that we did not amend our applications to meet the size and height restrictions. Right. So doesn't that defeat your claim of unconstitutionality, because whatever you say about the other provisions of the ordinance, if your application doesn't meet that particular horse requirement, then there's no need for us to even address your other points. And last, we could prove to a jury that in fact we were informed not to go ahead and file, and so by not filing, their height and size restriction was not met. So we're hiding behind the fact of them telling us not to, and oh, by the way, relying on this one part. Well, if you listened to what they said, you would have withdrawn the entire application, so that's not a good argument. We wouldn't be here at all today, it would be your honor. I think I would concur with that. But I think based upon the history of the previous counsel and what he has done in other jurisdictions, he made a determination, a strategic determination at that time, again, it wasn't part of it, I'm just asking you that there are facts that I do believe that would demonstrate that regardless of the application we would have filed, it would have been denied. And we would then want to go ahead and look at the futility doctrine of why go through the exercises. If you're going to jump through all these hoops, knowing at the end of the last hoop there's a brick wall. Which goes to the mootness argument, because I think that if you go ahead and find that in fact there is standing, that judicial notice was applied for and granted based upon their third ordinance, the point I'd like to make about that is it appears to me that the city now can change its mind whenever it's won. It has demonstrated its ability to do so by, from 2003, filing not one, which they apparently didn't get it right, not two, but now a third one. So what protects the constitutionality if they can change it at their whim, which they have demonstrated their ability to do so. Being changed in the ordinance? Changed in the ordinance, whenever they want. They did it three times. Is there any case that says a city is precluded from amending its ordinances at any time? Constitutional? There's no constitutional impediment to a city. If they want to enact a new ordinance every day, the law permits it, the constitution permits it. And therefore that ability, wouldn't that say that, hey, guess what they can go ahead and do? So by them, in this case, three times. And you can challenge it every day. If they amend it every day, you can amend your complaint to challenge the new ordinance, right? Correct. But three times for this particular ordinance since this case has been filed. I would like to then, if it's okay to move out of the constitutional grounds, That might be a good idea. Too bad I spent half the time on that. The breach of contract. They would like you to believe that it was negotiations, it was back and forth, and nothing was ever agreed upon. You will see in the declaration by Mr. Hollister that we in fact had 12 material points that were agreed upon. It wasn't this and that. The only item that I think was not agreed upon was the face of the sign. The exact location, the content, the withdrawal, the fees, everything was agreed upon. I think a jury gets to determine whether or not that makes it a counteroffer, a not counteroffer, or it was a meeting of the minds. Let me ask you, I'm trying to understand your legal argument here. If you and I have a dispute and I offer you $10,000 to settle that dispute, and you say, No, I'm not going to take $10,000, but I'll take $12,000. And I come back and say, No, I'm sorry, I just can't do that. And you say, Okay, $10,000. And I say, You know what, I've changed my mind. I agree. I agree. That was the facts. Distinguish that. I believe what ended up happening, based upon all the settlement conferences, that at the March 20th settlement conference, every single material term was agreed upon, except for the face of the sign. The question in my mind is, Is that a material fact? When you agree on the exact location, the revenue sharing, the dismissal, the 12 points that are in Mr. Hollister's declaration, that to me says there's a meeting of the mind. The face of the sign, you're talking about the LED display? Correct, whether it's a tri-LED or just the regular vinyl. That was the only thing. And I think a jury would get to decide, Is that material or is it not material? Counsel, in my former life, I worked in the county counsel's office. And everyone knew when you were negotiating with a municipality, until you take the contract before the governing body and gets approval, nothing's confirmed, nothing's finalized. My understanding is city council approved those material terms, except for the face. Right, so was a contract signed? There was no written contract. That's a problem. Yes, because when they agreed to all the terms, at that point in time they backed out. They then go ahead and say, Yes, we understand, we agree to all of it, but now we're sorry. We're not bound. Well, we don't want to be bound. Well, how do you get around the statute that says they're not bound until the mayor signs it? Is that a bright-line test? The way that I read all the cases, this is not a bright-line test. In fact, Judge Whalen stated by implication. So if in fact it's a bright-line test... What do you mean by implication? His words and his order. Implication. By implication, it must be signed. Because the word says shall, not must, not may. It says shall. So now we said we made a mockery of Judge Brooks' settlement conferences. I think what they're doing is making a mockery out of contract law. We can go ahead and agree on all material terms, and by the way, we get to unilaterally determine when we want to abide and not abide. In fact, opposing counsel even said that in their brief. They can honor or not honor, but we don't have that right to. So, counsel, if you're buying a house and you go through all the process, you go through the walk-through, you go through the inspection, you go through the loan documents, and everybody's agreed to the price, everybody's agreed to who's going to pay what, but the mortgage papers are never signed. Have you bought a house? Under your scenario? I think absolutely. I just don't have financing to get the house. No, if you don't sign the papers, if you don't go and sign the papers for the house, you can agree on every single item. And if you don't sign the papers, there has not been a purchase of the house. And that may be based upon that scenario dealing with statute of fraud's argument. It's not a statute of fraud's argument. It's a written contract. We're trying to enforce the oral obligation behind it. And so that's what you're saying? You're trying to enforce an oral obligation? I am, yes. I'd also like to go ahead and say this, you know, the reason for having the mayor sign is not to hastily enter into these agreements. Clearly, you can see from the history that wasn't done. I also believe there's an underlying no sweetheart deals, right? We don't want to go ahead and, oh, by the way, we'll give it to you. But maybe the reason is so we don't end up in court here today. Maybe that's the reason. And then maybe we do develop a bright line test, and that would be fantastic. But I don't believe that is what the law is. Counsel, this is not an unsophisticated company. I mean, the argument you're making has more traction if you're dealing with someone who's not used to the formalities of contract negotiation and finality. It's a little difficult to make the argument that a sophisticated company with an attorney as a principal would not know that, you know, that the contract has to be signed before it's finalized. That's a hard argument. I appreciate the compliment. But the last thing I'd like to make, and I would like to reserve a couple minutes for rebuttal, is that this isn't something that the city didn't want to do. They had four permits. During the negotiations, they gave them to other parties, even though they promised that they would give them to us. So part of that is saying, oh, you know, we want to understand the mayor has to sign because the intent is not to hastily enter into. And yet they go ahead and do the exact thing with another party, just not with us. Did the mayor sign those? I do not know. The one thing I would like to do is go back to find out in evidence is how much they, in fact, honor their own guidelines, where I would bet that I would be able to find out that there are a whole bunch of contracts the mayor didn't sign that they're honoring. I'd like to reserve the final. All right. Thank you, counsel. May it please the court, thank you for this opportunity. Stephen Beamer for the city of El Cajon. First of all, on the constitutional issues, I did not hear anything new. I believe we've adequately outlined the constitutional issues in our brief, and if there are no questions, I would like to address the contract claims. Were you the attorney who was advising the city throughout these negotiations? Yes. Yes, I've been doing governmental work for 20 years, and I've represented the city of El Cajon for 20 years. And what I wanted to touch on with respect to this settlement is, number one, the terms and conditions were always subject to city council ratification. I thought he said the city did ratify. That was the point that I made about the city having to approve it, and I thought he said the city did ratify these terms. No, Your Honor. Obviously, you indicated you have a background with county council. Closed session process, you go in, you talk to your council or your board, as the court's well aware. The council gives you direction. You then go out and you solidify the settlement agreement, and not until that writing is signed by the mayor do you have an action item that's binding upon the city. If you look at the government code specifically, and we cite the court to that code for government code section 40602, the rationale behind that is so you don't have this type of scenario where someone can come in and claim that either special counsel or an individual within the city can bind the city to oral agreements. That's the rationale behind the government code. The other nuance that's important here is, and the Justice pointed this out, we never had consent. The deal was always changing. What's ironic about counsel's position is Judge Brooks sanctioned the city of El Cajon $16,000, which is unprecedented in my career, for bad faith negotiation by way of motion. That speaks volumes to the conduct of the parties in the state of mind, bad faith negotiation. You never got to a point of contract. You can't be sanctioned for bad faith negotiation if you have a valid binding agreement that is enforceable. And they took the benefit of the bad faith negotiation. Now they want a benefit of a binding oral agreement, which flies in the face of the law and the conduct of the parties. Do you agree with the opposing counsel that the only thing that was not agreed upon was the sign, the LED? Absolutely not. The record demonstrates that the LEDs were not even at issue until the tail end of negotiation. And the city council wanted nothing to do with these LED signs. The locations were changing. They wanted locations on the freeway, Interstate 8, down in San Diego, which pursuant to Caltrans could not be put on that because it's a scenic stretch of highway. Then they would move the size, the type, the revenue sharing. It was a moving target. And we got close, but we never consummated a contract, never signed by the mayor, never agreed to by counsel. There is no evidence other than what's before this court because the closed session is attorney-client privilege. And what the city has done with other contracts is irrelevant to this action. So I would ask that the court affirm the district court's position here. I think it was well-reasoned, well-thought-out, and clearly the parties did not reach a contract in this case. And I'd open it up to any questions the court may have. Thank you. It appears there are none. Thank you, Your Honors. Thank you, Your Honors. I will agree that, yes, there was a lot of negotiations back and forth, interstate aid. If our last communication was, oh, we're still negotiating revenue sharing, we're still negotiating the sites, we're still negotiating those material terms, I absolutely concur. That's not what happened in this case. What happened in this case is every single term was agreed upon in the settlement conference as of, I believe, the March 20th. And then what ended up happening, the reason there's sanction is after that, the only issue was the face. And at that point in time, the city pulled it out from underneath us without justification. The city council did. City council or the attorney for the city. I don't know exactly. It came back to us of, no, by the way, yes, we agreed on everything, but now we don't. But you said the city had ratified it. By that you meant the people you were negotiating with, not the city council, right? I believe, based upon my recollection, that we were informed that the city council has agreed, based upon the city attorney, that to all terms except for the face of the sign. So they rejected the last offer. I mean, getting back to my question to you about. I don't believe that's a rejection. I believe that all material terms, that a jury would get to go ahead and say, listen, you agreed on 12 material terms.  that there was a meeting of the minds, that they, in fact, wanted to do this, and then all of a sudden they decided, oh, by the way, even though we have agreed on all material terms, we don't want to do it with you. But we'll do it with somebody else. You know, counsel had a good point. If there was a finding that there was bad faith negotiation, why would there be a settlement? Why would there be an agreement if, on the one hand, they were not negotiating in good faith? How could that be consistent if we reached agreement? Because that's the very antithesis of... And that's why we had to go ahead and file the suit, is that there wasn't any ability to go ahead and bind that. And that's why we filed the amended complaint, to include that as an allegation. All right. Okay. I understand your argument. Thank you. Thank you to both counsel. The case just argued is submitted for decision by the court. The final case on calendar for argument today is Hunt v. City of Los Angeles.
judges: Seabright, Goodwin, Rawlinson